UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARY PATRICIA LEENERTS,                                            Plaintiff,

v.                                               Civil Action No. 3:18-cv-765-DJH-CHL

MULTI PACKAGING SOLUTIONS OF
KENTUCKY, LLC,                                                     Defendant.

\* \* \* \* \*

## ORDER

Plaintiff Mary Patricia Leenerts alleges that her former employer, Multi Packaging Solutions of Kentucky, LLC, created a hostile work environment, discriminated against her based on her gender and disability, and committed fraud.  (Docket No. 1-2)  Multi Packaging moves for summary judgment on all claims.[1]  (D.N. 16)  In response, Leenerts argues that the motion for summary judgment is premature and disputes its merits.  (D.N. 20, PageID # 290–99)  For the reasons set forth below, Multi Packaging's motion will be granted in part.

## I.

Leenerts began working at Multi Packaging (which then operated under a different name) in 1989.  (D.N. 31-1, PageID # 337–38)  In 2006, Leenerts transferred to Multi Packaging's Louisville division, where she worked as a planner.  (*Id.*, PageID # 336–37)  Mike Mullins was Leenerts's direct supervisor from 2006 until his retirement in 2017.  (*Id.*, PageID # 339)  Leenerts claims that Mullins began harassing her "soon after [she] started" working in Louisville in 2006.  (*Id.*, PageID # 343)  The alleged harassment included incidents such as Mullins "[w]alking up

---

[1] Leenerts initially did not file a timely response to Multi Packaging's motion, and Multi Packaging moved for entry of summary judgment pursuant to local rule 7.1(c).  (D.N. 17)  Subsequently, Leenerts moved for an extension of time to file a response (D.N. 18), and Magistrate Judge Colin H. Lindsay granted her motion.  (D.N. 19)

1

quietly behind [Leenerts's] planning table and standing directly behind her until she moved . . . caus[ing] [Leenerts] to bump into his front side with her backside"; "quietly com[ing] up behind [Leenerts] and suddenly smell[ing] her neck very closely"; and "mouth[ing] the words 'I love you' when no one else would look."  (D.N. 1-2, PageID # 14; *see* D.N. 31-1, PageID # 343–47)  This conduct occurred "[a]t least a couple of times a week" and continued until 2017.[2] (D.N. 31-1, PageID # 346)

When Mullins retired in 2017, Beth McShane became Leenerts's supervisor.  (*Id.*, PageID # 391)  Leenerts complained about McShane's "lack of knowledge" and adversarial attitude.  (*Id.*, PageID # 395)  In December 2017, Leenerts had a confrontation with McShane.  In an email describing the incident, Leenerts explained:

> I sort of came unglued Friday evening with [McShane].  Perhaps "unhinged" would be a better word . . . I regrettably lost my temper in a very impromptu meeting . . . I threw a few F bombs, took the lords name in va[in] a couple of times [and] basically told [McShane] to "start managing her dept instead of letting others manage it for her [and] to teach her staff how to do their job" all in a loud voice . . . I let my anger get the best of me [and] I regret it happened.

(D.N. 16-4, PageID # 267–68)

An employee who overheard the incident described hearing "loud yelling" and characterized Leenerts as "totally out of control of herself, which is something she has a pattern of."  (D.N. 16-5, PageID # 269)  Another employee described Leenerts "screaming and shouting loudly and just going off [in McShane's office]" and stated that when she herself went into Leenerts's office after the confrontation to drop off work, "[Leenerts] went off on me saying stuff

---

[2] Although Leenerts testified about instances occurring from 2006 onward, she also testified that her lawsuit is limited to conduct that occurred between 2013 and the end of her employment.  (D.N. 31-1, PageID # 359)

like stay away from her, get out, she is done with me." (D.N. 16-11, PageID # 280) Another

employee described the incident as follows:

> [I] heard [Leenerts] yelling in a loud voice in [McShane's] office. The door was
> closed and I could not hear everything. When the door opened and [Leenerts] was
> leaving I heard [Leenerts] yell, "because she does not do her fucking job." During
> all of the yelling I did not hear [McShane] yell or raise her voice. She seemed to
> remain calm. (D.N. 16-6, PageID # 270)

Leenerts testified that she self-reported the event to Terry Hesketh, Multi Packaging's

Regional Operations Director, and Bob Gilland, Multi Packaging's Operations Manager. (D.N.

31-1, PageID # 398; *see* D.N. 16-1, PageID # 236) Hesketh then reported it to Bonita Wilson,

Multi Packaging's Vice President of Planning. (D.N. 16-7, PageID 272; *see* D.N. 16-1, PageID #

236)

The confrontation with McShane was not the first time that Leenerts's supervisors had

raised concerns about her behavior at work. Wilson had previously filed a written complaint after

"an encounter with [Leenerts] that was unprofessional and disrespectful." (D.N. 16-9, PageID #

277–78) Leenerts was informed at that time by Mullins that her conduct was "found to be in

violation of [Multi Packaging's] Behavior Standards of Conduct." (D.N. 16-10, PageID # 279)

Mullins and Leenerts also spoke in 2014 about Leenerts's behavior "being unprofessional,"

specifically regarding "complaints about [Leenerts] being mean and rude to co-workers." (*Id.*)

Multi Packaging fired Leenerts in December 2017. Multi Packaging claims that it

investigated the incident with McShane and terminated Leenerts because of that incident, on

grounds of insubordination. (D.N. 16-1, PageID # 241; *see* D.N. 16-9, PageID # 278) Leenerts

testified that Multi Packaging told her she "was fired for insubordination and cussing" (D.N. 31-

1, PageID # 398), but she claims that she has "no idea" why she was fired. (*Id.*)

**II.**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The evidence of the nonmoving party is to be believed, *id.* at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in that party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the nonmoving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the nonmovant to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmovants] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

## A.    Rule 56(d) Motion

As a threshold matter, the Court addresses Leenerts's argument that Multi Packaging's motion for summary judgment should be denied or held in abeyance pursuant to Federal Rule of Civil Procedure 56(d). (D.N. 20, PageID # 294) Rule 56(d) provides that if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

opposition" to a summary-judgment motion, the court may defer ruling or deny the motion.  Fed. R. Civ. P. 56(d).  Although Leenerts took no depositions during discovery, she has now invoked 56(d) in an attempt to depose Mullins and McShane.  (D.N. 20, PageID # 291)

The affidavit accompanying a Rule 56(d) motion must "indicate to the district court [the party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (quoting *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004)).  "Mere speculation that there is some relevant evidence not yet discovered will never suffice." *Saulsberry v. Fed. Exp. Corp.*, 552 F. App'x 424, 427–28 (6th Cir. 2014) (quoting 11 Moore, et al., *Moore's Federal Practice* § 56.102 [2] (2012)).

Leenerts's affidavit does not meet these requirements because it does not address what material facts further discovery would uncover.  The affidavit states that "discovery will reveal that Beth McShane's hiring into the position of 'production manager[]' . . . was done with the purpose of avoiding posting a job for which [Leenerts] was qualified." (D.N. 20-3, PageID # 304)  But this information would not support Leenerts's claim for failure to promote because, as discussed below, *see infra* at part II(D)(2), McShane is a woman.  The affidavit additionally states that "discovery will support each of Counts I-III as they pertain to Mike Mullins, specifically discrimination via hostile environment, failure to promote, and disparate treatment." (D.N. 20-3, PageID # 304)  These "general and conclusory" statements do not identify material facts.  *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 334 (6th Cir. 2010) (quoting *Ball*, 385 F.3d at 720).  Since Leenerts has failed to meet Rule 56(d)'s affidavit requirement, the Court will consider Multi Packaging's motion for summary judgment on the merits.

**B.    Sexual Harassment**

"A plaintiff may establish a violation of Title VII [of the Civil Rights Act] by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986)). "Discrimination in this form occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)).

To establish a prima facie case of hostile work environment, a plaintiff must show, by a preponderance of the evidence: "(1) that she was a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment; and (5) that there is a basis for employer liability." *Thornton v. Fed. Exp. Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). "[O]nce a plaintiff has established actionable discrimination, the inquiry turns on whether a supervisor's harassment culminated in a 'tangible employment action,' such as 'discharge, demotion, or undesirable reassignment.'" *Id.* at 561 n.2 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998)). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "If a plaintiff can prove a tangible employment action, liability is automatic; if however, there was no tangible employment action, employers have an affirmative defense to liability." *Williams*, 187 F.3d at 561 n.2.

Leenerts's sexual-harassment claim rests on the behavior of her supervisor, Mullins.  (D.N. 20, PageID # 296; D.N. 31-1, PageID # 447)   Leenerts testified about various instances of Mullins's verbal and physical misconduct.  (*See* D.N. 31-1, PageID # 343–47); *see supra* at part I. Multi Packaging concedes, for purposes of its summary-judgment motion, that Leenerts has established a prima facie case of sexual harassment.  (*See* D.N. 16-1, PageID # 248 ("[The] Court may presume, for purposes of this [m]otion only, that Leenerts has stated a *prima facie* case of sexual harassment."))   The Court's inquiry thus turns to whether Mullins's alleged harassment "culminated in a 'tangible employment action.'"  *Williams*, 187 F.3d at 561 n.2 (quoting *Faragher*, 524 U.S. at 808).  Leenerts claims that she "has established a clearly adverse and tangible series of job actions: continued failure to benchmark[3] her position for a new title and raise in pay after she was given more responsibilities."  (D.N. 20, PageID # 296)

Even if "failure to benchmark" qualified as a tangible employment action, Leenerts has not alleged that it was Mullins who took that action against her.  Instead, Leenerts's complaint states that less than two months after Leenerts emailed Mullins "requesting a benchmark for increased salary" (D.N. 1-2, PageID # 26), Leenerts met with Mullins and two of Multi Packaging's human resources employees—Dawn Cope and Dana Howard.  (*See id*., PageID # 28)   At the meeting, Cope explained that "the planning department budget was 2% and [Leenerts] got the highest raise of the 2%.  No benchmark increase would be issued because everybody's job responsibilities had changed and they were all taking on more work as the business was in a constant state of change." (*Id*.)  No evidence shows that Mullins was responsible for the alleged "failure to benchmark"—on the contrary, Leenerts testified that Mullins never took any disciplinary action against her, such as

---

[3] [3] Leenerts explained at her deposition that asking for a benchmark means to ask the company to "[c]reate a new job," or to "come up with a job and [Multi Packaging will] investigate it."  (D.N. 31-1, PageID # 449)

a demotion, suspension, or loss of pay, (*see* D.N. 31-1, PageID # 340, 352–53), and did not "take

any action against [her] job."  (*Id.*, PageID # 354)  Multi Packaging may therefore present an

affirmative defense to liability.  *See Williams*, 187 F.3d at 561 n.2. (quoting *Faragher*, 524 U.S. at

808).

"Where a plaintiff employee suffered no tangible employment action . . . the employer can

defend against vicarious liability for sexual harassment by its supervisor by establishing by a

preponderance of the evidence the affirmative defense set forth in *Burlington* . . . and *Faragher*."

*Quinn v. Griffith*, 515 F. App'x 543, 547 (6th Cir. 2013); *see Ellerth*, 524 U.S. at 765; *Faragher*,

524 U.S. at 807.  "The affirmative defense requires that the employer demonstrate two elements:

(a) that it exercised reasonable care to prevent and correct promptly any sexually harassing

behavior; and (b) that [the] plaintiff unreasonably failed to take advantage of any preventive or

corrective opportunities provided by the employer or to avoid harm otherwise."  *Quinn*, 515 F.

App'x at 547.  "Generally, an employer satisfies the first part of this two-part standard when it has

promulgated and enforced a sexual harassment policy."  *Thornton*, 530 F.3d at 456.  "[A]n

effective harassment policy should at least: (1) require supervisors to report incidents of sexual

harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide

a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for

training regarding the policy."  *Id.* (quoting *Clark v. United Parcel Service, Inc.*, 400 F.3d 341,

349–50 (6th Cir. 2005) (internal citations omitted); *see also Shields v. Federal Exp. Customer

Information Services, Inc.*, 499 F. App'x 473, 478 (6th Cir 2012).

Multi Packaging argues that "there is no dispute that [it] had a sufficient policy in place to

correct or prevent harassing behavior."  (D.N. 16-1, PageID # 248)  In support, Multi Packaging

offers excerpts from its employee handbook that describe the company's behavior standards,

harassment policy, and reporting procedures (*see* D.N. 16-3, PageID # 262–66), and various employee acknowledgment documents, signed by Leenerts, showing that she received and understood the handbook.  (*See* D.N. 16-2, PageID # 256–60)  But this evidence does not show that Multi Packaging's policy meets the Sixth Circuit's standards because the policy—as demonstrated in the record—does not require supervisors to report incidents of sexual harassment or specifically permit both informal and formal complaints.  *See Thornton*, 530 F.3d at 456; *Shields*, 499 F. App'x at 478.  Multi Packaging has therefore failed to demonstrate the first element of its affirmative defense, *see Quinn*, 515 F. App'x at 547, and is not entitled to summary judgment on Leenerts's sexual-harassment claim.

## C.     Americans with Disabilities Act

"The ADA prohibits discrimination because of disability against 'a qualified individual with a disability.'"  *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (quoting 42 U.S.C. § 12112(a)).  The Act defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Although her complaint does not identify her disability, Leenerts testified that she has post-traumatic stress disorder (D.N. 31-1, PageID # 434)  Leenerts did not state which, if any, "major life activities" her PTSD substantially limits, *see* 42 U.S.C. § 12102(1), but she did testify that it manifests in "all sorts of ways," including "[d]epression [and] anxiety." (D.N. 31-1, PageID # 445)  PTSD is "presumed to substantially impair a major life activity."  Anne M. Payne, *Employment Discrimination Claims Based on Mental Illness or Impairment Under the Americans with Disabilities Act* § 17, 122 *Am. Jur. Trials* (Oct. 2020 update); *see* 29 C.F.R. § 1630.2(j)(3)(iii).

"To prove a prima facie case of disability discrimination, a plaintiff must show that (1) [s]he is disabled, (2) [s]he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) [s]he suffered an adverse employment action because of her disability . . . [meaning] [t]he plaintiff's disability must be a 'but for' cause of the adverse employment action." *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014). Assuming Leenerts's PTSD qualifies, she has not shown that Multi Packaging took an adverse employment action against her because of it. Moreover, Leenerts testified that she did not inform Multi Packaging of her disability or ask for an accommodation. (*See* D.N. 31-1, PageID # 435–39) She has not demonstrated that Multi Packaging was otherwise aware of her PTSD. Therefore even if Leenerts were able to identify an adverse employment action that Multi Packaging took against her, she would not be able to show that her PTSD was a "but for" cause of it. *Demyanovich*, 747 F.3d at 419; *see also Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012). Assuming, as Multi Packaging does, that Leenerts's ADA claim is based on a failure to accommodate (*see* D.N. 16-1, PageID # 253), this claim also fails because of Leenerts's failure to disclose her disability or ask for an accommodation. *See Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 838 (6th Cir. 2018) (explaining that to establish a prima facie failure-to-accommodate claim, plaintiff must show that employer knew or had reason to know about his or her disability); (*see* D.N. 31-1, PageID # 435–39) Although Leenerts testified that Mullins knew of her PTSD (*see* D.N. 31-1, PageID # 435), she offers no evidence—nor does she even argue—that he took any adverse employment action against her because of it. The Court will therefore grant summary judgment in favor of Multi Packaging on Leenerts's ADA claim.

**D.     Gender Discrimination**

**1.     Discriminatory Treatment**

Leenerts claims gender discrimination on two grounds: that "male co-workers regularly received benefits (i.e., time off) that she was denied[,] and that, had a man engaged in the behavior she engaged in that led to her dismissal, he would not have been fired." (D.N. 20, PageID # 298) In order to avoid summary judgment on these claims, Leenerts "must offer 'direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Suits v. The Heil Co.*, 192 F. App'x 399, 400 (6th Cir. 2006) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003)). In the absence of direct evidence, which Leenerts has not provided,[4] Leenerts must establish a prima facie case of gender discrimination by showing "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). As a woman, Leenerts is a member of a protected group. *See Redlin v. Grosse Pointe Public Sch. Sys.*, 921 F.3d 599, 607 (6th Cir. 2019). But Leenerts has failed to establish the other elements of her prima facie case.

Leenerts bases her claim for withheld benefits on Mullins's failure to promptly approve her time off. (D.N. 31-1, PageID # 360) Specifically, Leenerts testified that the "benefits withheld from [her] [were] the immediate approval of vacation days . . . [because] [she] had to wait a month [whereas] the men would get immediate approval." (*Id.*, PageID # 360–61) "An adverse employment action is 'a materially adverse change in the terms and conditions of [a plaintiff's]

---

[4] "In the Sixth Circuit, 'direct evidence' is that which is probative of an alleged fact without requiring further inference." *Suits*, 192 F. App'x at 401. Leenerts has provided no such evidence, and her response appropriately invokes the test for indirect evidence. (*See* D.N. 20, PageID # 298–99)

employment.'"  *Redlin*, 921 F.3d at 607 (6th Cir. 2019) (quoting *Spees v. James Marine, Inc.*, 617

F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789,

795 (6th Cir. 2004) (en banc)).  "The action must 'constitute[ ] a significant change in employment

status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits.'" *Id*. (quoting *White v.*

*Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Ellerth*, 524 U.S. at 761).

Mullins's alleged failure to approve her vacation days quickly enough (*see* D.N. 31-1, PageID #

360–366) does not qualify as a "significant change in employment status." *Redlin*, 921 F.3d at

607.  Leenerts therefore has not shown that "she was subjected to an adverse employment

decision."  *Peltier*, 388 F.3d at 987; *see Regan v. Faurecia Automotive Seating, Inc.*, 679 F.3d

475, 481 (6th Cir. 2012) (denial of employee's request for a modified work schedule and to work

through the lunch hour did not constitute an adverse employment action); *Douglas v. Caldera*, 29

F. App'x 257, 258 (6th Cir. 2002) (denial of employee's request to attend a training workshop was

not an adverse employment action).

    Additionally, although Leenerts testified that "it was openly discussed when [the men] got

their vacation," she testified that she did not know when or under what circumstances they

requested vacation days, nor how many days off they requested.  (D.N. 31-1, PageID # 363)

Without this information, Leenerts's requests for time off cannot be properly compared with those

of her male colleagues.  *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)

(explaining that in order to be deemed similarly situated, "the individuals with whom [the plaintiff]

compares herself . . . [must have] engaged in the same conduct without such differentiating or

mitigating circumstances that would distinguish their conduct or the employer's treatment of them

for it" (quoting *Gray v. Toshiba Am. Consumer Products, Inc.*, 263 F.3d 595, 599 (6th Cir. 2001))).

Leenerts thus cannot show that the men were "similarly situated" or "treated more favorably." *Peltier*, 388 F.3d at 987.

As for Leenerts's claim that a man who behaved as she did would not have been fired, Leenerts has offered no evidence to support this assertion. As discussed above, *see supra* at part I, Leenerts was fired for insubordination following an outburst directed at her boss. Leenerts testified that a male employee had previously sworn at his boss and not been fired, and another male employee had said "fuck" at a meeting in front of his boss (but not directed at the boss) and not been fired. (D.N. 31-1, PageID # 401–02) Leenerts, in contrast, was fired after she, in her own words, became "unhinged" at her supervisor, "lost [her] temper," "threw a few F bombs [and] took the lords name in va[in] a couple of times," and told her supervisor to do her job, "all in a loud voice." (D.N. 16-4, PageID # 267–68) Three employees provided statements corroborating her account of the incident. *See supra* at part I. Leenerts specifically testified that she was "not sure" if she knew of an instance where a man had engaged in similar behavior (D.N. 31, PageID # 432), and her response further acknowledges that she lacks information on this. (*See* D.N. 20, PageID # 299) Because Leenerts cannot point to an instance where any employee—male or female—had an outburst comparable to hers, she has failed to show that "similarly situated [male] employees [were] treated more favorably." *Peltier*, 388 F.3d at 987. Leenerts has therefore failed to establish her claims of gender discrimination, and the Court will grant summary judgment in favor of Multi Packaging on these claims.

### 2.     Failure to Promote

Leenerts argues that "McShane's hiring into the position of 'production manager,' which [was] never . . . posted, was done with the purpose of avoiding posting a job for promotion at all – a job for which [Leenerts] was qualified – in order to keep her from even being able to apply for

the job." (D.N. 20, PageID # 297) "[A] plaintiff with a discrimination claim based on a failure to promote must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied."[5] *White v. Columbus Metro. Hous. Auth.*, 429 F. 3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000)). Even assuming Multi Packaging did hire McShane in order to keep Leenerts from applying for the job, it does not help Leenerts's claim because McShane is a woman—and therefore Leenerts cannot show that "an individual of similar qualifications who was not [a woman] received the job at the time [that Leenerts's] request for [a] promotion was denied." *White*, 429 F. 3d 240. Leenerts thus cannot succeed on a claim for failure to promote, and the Court will grant summary judgment to Multi Packaging on this claim.

**E.     Fraud**

Although Leenerts's complaint does not explain the basis for her fraud claim (*see* D.N. 1-2, PageID # 58), she testified at her deposition that it rests on false statements made by Hesketh. (*See* D.N. 31-1, PageID # 127–29, 135–36) Specifically, Leenerts testified that Hesketh falsely claimed that (1) Leenerts had received an exit interview and (2) an investigation had been made into Leenerts's incident with McShane. *See id.* "Fraud consists of the following elements: (i) a

---

[5] Leenerts's complaint notes that she did not receive any "benchmarks" but McShane did when Multi Packaging appointed her to be Leenerts's supervisor. (*See* D.N. 1-2, PageID # 28, 30) Aside from these assertions, Leenerts's complaint does not clearly state a claim for failure to promote. (*See* D.N. 1-2, PageID # 56–58) It does state a broad claim of gender discrimination. (*Id.* at 57) Multi Packaging identifies failure to promote as one of Leenerts's claims in its motion for summary judgment (*see* D.N. 16-1, PageID # 253), and Leenerts's response clearly addresses this claim. (*See* D.N. 20, PageID # 293, 297) Leenerts also testified that she was denied promotions because of her gender. (*See* D.N. 31-1, PageID # 448)

material representation; (ii) which is false; (iii) that is known to be false or made recklessly; (iv) that is made with inducement to be acted upon; (v) that the plaintiff acts in reliance thereon; and (vi) that the plaintiff is injured." *Sierra Enters. Inc. v. SWO & ISM, LCC*, 264 F. Supp. 3d 826, 840 (W.D. Ky. Aug. 29, 2017) (citing *UPS v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999)).

Leenerts's testimony showed that she cannot establish a fraud claim based on either of Hesketh's alleged statements. Leenerts testified that Hesketh's statement regarding the exit interview had not damaged her, and she was not sure if she had relied on it. (*See* D.N. 31-1, PageID # 456–57) This claim therefore fails on the reliance and injury elements. *See Sierra Enterprises*, 264 F. Supp. 3d at 841. Leenerts also testified that she did not know if Hesketh's statement about the investigation was false because she did not know if Multi Packaging had investigated the incident. (*Id.*, PageID # 457) Multi Packaging asserts that Hesketh and Multi Packaging did investigate the incident. (*See* D.N. 16-1, PageID # 237, 241; D.N. 16-9, PageID # 278) Leenerts has not cited any evidence disputing Multi Packaging's account, *see* Fed. R. Civ. P. 56(c)(1), and therefore she has not demonstrated that there is "evidence on which the jury could reasonably find" that Multi Packaging did not conduct an investigation. *Anderson*, 477 U.S. at 252. This claim therefore fails on the falsity prong. *See Sierra Enters.*, 264 F. Supp. 3d at 841. The Court will therefore grant Multi Packaging summary judgment on Leenerts's fraud claim.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Multi Packaging's motion for summary judgment (D.N. 16) is **GRANTED** as to Leenerts's ADA claim and claims of gender discrimination and fraud (Counts II, III, and IV).  The motion is **DENIED** as to Leenerts's sexual-harassment claim (Count I).

(2) Multi Packaging's motion for entry of summary judgment (D.N. 17) is **DENIED** as moot.