UNITED STATES DISTRICT COURT
WESTERN DIVISION OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| MARY PATRICIA LEENERTS, )<br> )<br>    Plaintiff )<br> )<br>v. )<br> )<br> )<br>MULTI PACKAGING SOLUTIONS OF )<br>KENTUCKY, LLC, )<br> )<br>    Defendant )<br> ) | Case No. 3:18-cv-765-DJH<br>*Filed Electronically* |

**MOTION TO ALTER, AMEND OR VACATE ORDER
DENYING SUMMARY JUDGMENT
ON PLAINTIFF'S CLAIM FOR SEXUAL HARASSMENT**

Comes the Defendant, Multi Packaging Solutions of Kentucky, LLC, ("MPS"), by counsel, and for its Memorandum in Support of Motion to Alter, Amend or Vacate Order Denying Summary Judgment on Plaintiff's Claim for Sexual Harassment submits the following:

**I. PROCEDURAL BACKGROUND**

Plaintiff, Mary Leenerts ("Leenerts"), alleged that her former supervisor, Mike Mullins ("Mullins") sexually harassed her for seventeen years[1] by engaging in the following actions: (a) walking up behind her so that they bumped up against one another; (b) quietly coming up behind her and smelling her neck; and (c) mouthing the words "I love you" when no one was looking. (*See* DN 32, Order Denying Summary Judgment at 2). Leenerts complained that this conduct occurred "a couple of times a week" through 2017 when Mullins retired. (*Id.*). Leenerts admitted that although she was aware of MPS's policy against harassment, she never complained, formally or informally, about Mullins' behavior. (Leenerts depo., at 125).

---

[1] The statute of limitations bars any claim for conduct that occurred prior to 2013.

MPS moved for summary judgment on the sexual harassment claim on two grounds. First, MPS argued that the conduct alleged by Leenerts was insufficient to support a *prima facie* case of sexual harassment. (DN 16, Motion for Summary Judgment at 16-18). Alternatively, MPS argued that it was entitled to the affirmative defense afforded to it by the U.S. Supreme Court in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (U.S. 1998). (*Id.* at 19). Under this defense, MPS put forth evidence that it had a sexual harassment policy designed to correct or prevent the harassing behavior, and that Leenerts unreasonably failed to take advantage of the policy.

This Court did not address MPS's first argument that Leenerts failed to produce sufficient evidence for a jury to conclude that Mullins' conduct amounted to sexual harassment. (DN 32 at 7). Instead, the Court asserted that MPS "conced[ed]" that Leenerts has established a *prima facie* case of sexual harassment. (*Id.*). MPS, however, did not make any such concession. The Court also held that MPS's policy did not meet the standard established by the Sixth Circuit to satisfy the first prong of the affirmative defense. (*Id.* at 9, *citing Thornton v. Federal Express Corp.*, 530 F.3d 451 (6th Cir. 2008). Specifically, the Court concluded that MPS's policy did not allow for both formal and informal reporting of complaints, and that it did not require supervisors to report incidents of sexual harassment. (*Id.*). For the reasons set forth below, MPS respectful asks this Court to alter, amend or vacate its order by ruling that Mullins' alleged conduct does not establish a *prima facie* case of sexual harassment and/or that MPS's policy met the Sixth Circuit standard.

II. **LEENERTS DID NOT ESTABLISH A *PRIMA FACIE* CLAIM OF SEXUAL HARASSMENT.**

This Court set forth the definition of sexual harassment. "'Discrimination in this form occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (DN 32 at 6). As noted previously by MPS in its Motion for

2

Summary Judgment, "merely offensive" conduct will not support a claim for harassment. (DN 16 at 17, *citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993); and *Black v. Zaring Homes, Inc.*, 104 F.3d 882 (6th Cir. 1997).

In *Black v. Zaring Homes, Inc.*, 104 F.3d 882 (6th Cir. 1997), the Sixth Circuit reversed a jury verdict and held that jokes and comments in a female employee's presence were not severe or pervasive enough to create a hostile work environment. In *Black*, the plaintiff alleged that during bi-weekly meetings, male employees would make comments and jokes that made her uncomfortable, including: (1) referring to pastries and saying, "Nothing I like more in the morning than sticky buns" while wiggling his eyebrows and smiling at plaintiff; (2) referring to naming land next to a Hooters Restaurant "Titsville" or "Twin Peaks"; (3) laughing when plaintiff correctly pronounced the name of a purchaser, Dr. Paul Busam, (pronounced "bosom"); (4) jokingly asking plaintiff if she was dancing on the tables at a biker bar; (5) referring to women as "broads"; and (6) telling her she was paid well for a "woman." The Sixth Circuit reversed the jury verdict and dismissed plaintiff's claims, holding that not all comments that have sexual overtones are actionable unless they meet the severe or pervasive standard:

> Although the verbal comments were offensive and inappropriate, and the record suggests that defendant's employees did not always conduct themselves in a professional manner, Title VII was "not designed to purge the workplace of vulgarity."
>
> \*\*\*
>
> The Supreme Court in both decisions [*Harris* and *Meritor*] recognized that there may be times when offensive comments have an impact in the workplace, indeed constitute "harassment," but do not create an objectively hostile work environment. "[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII."

*Black*, 104 F.3d at 826, 827 (citations omitted).

When analyzing such claims, the U.S. Supreme Court directs lower courts to note the

difference between statements that are merely boorish or vulgar and those that are deeply offensive and sexually harassing. It is important to remember the U.S. Supreme Court has "never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotation." *Oncale v. Sundowner Offshore Service, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1002 (1998). This is illustrated in *Morris v. Oldham County*, 201 F.3d 784 (6th Cir. 2000). In *Morris*, the plaintiff alleged that her supervisor offered to give her a better performance evaluation in exchange for sexual favors. When she refused, he became overly critical of her and continued to harass her. She also complained of hearing dirty jokes in the workplace, comments about her state of dress, and comments about her appearance. The Court noted that the conduct amounted to nothing more than "simple teasing" and "offhand comments" which is insufficient to alter the terms and conditions of employment. *Id.* at 790. In affirming summary judgment for the employer, the Court found that while the conduct of her supervisor certainly contained sexual overtones, the totality of the circumstances did not create a hostile work environment.

A *prima facie* case requires a plaintiff to demonstrate through competent evidence that she was subjected to unwelcome sexual harassment as it is defined by the law. *See Thornton*, 530 F.3d 451. Even viewing Leenerts' allegations in a light most favorable to her, she has failed to demonstrate a sexually hostile work environment. Leenerts was unable to identify a single sexist comment made by Mullins. (Leenerts depo., at 21-32). She does not allege that Mullins groped or fondled her, or that he propositioned her. Further, there is a complete absence of testimony that the behavior attributed to Mullins interfered with her job. She does not allege that she actively took steps to avoid Mullins as a result of the alleged harassment. She does not allege that she was unable to focus or otherwise do her job because of Mullins' conduct. Simply put, there is no

evidence that Mullins' actions affected Leenerts' job performance. Additionally, as described by Leenerts, Mullins' conduct was certainly immature and boorish behavior, but does not rise to the level of creating a sexually hostile work environment. A reasonably jury, therefore, could not conclude that his conduct was more than merely offensive. Indeed, Mullins' conduct was far less egregious than the vulgarities illustrated in *Black* or *Morris* which were found to fall short of amounting to actionable harassment.

MPS did not concede that Leenerts established a *prima facie* case of sexual harassment for purposes of the Motion for Summary Judgment. Rather, it argued that she failed to present sufficient evidence in response to summary judgment that she was subjected to a hostile work environment. Leenerts' inability to demonstrate that Mullins' conduct was so severe or pervasive that it affected the terms and conditions of her employment requires summary judgment in favor of MPS. Accordingly, MPS respectfully requests that this Court amend its Order and dismiss Leenerts' claim for sexual harassment for her failure to establish a *prima facie* case.

## II.   MPS'S SEXUAL HARASSMENT POLICY MEETS THE SIXTH CIRCUIT STANDARD.

This Court found that Leenerts did not suffer any adverse employment action related to her claim of sexual harassment. (DN 32 at 7-8). As a result, MPS was allowed to prove the elements of the affirmative defense to her claims. This affirmative defense requires MPS to show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that [the] plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." (DN 32 at 8). " [A]n effective harassment policy should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide

a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy.'" *Thornton*, 530 F.3d at 456 (citation omitted).

There was no dispute that Leenerts failed to take advantage of MPS's policy. This Court, therefore, focused on whether the policy met the standard set forth in *Thornton*, 530 F.3d 451. The Reporting Procedure was stated as follows:

> **Reporting Procedure**
>
> If you believe that an employee, supervisor, manager, customer, vendor or any other individual has subjected you to harassment affecting your work environment, or if you believe anyone is being treated unlawfully, you ***must*** report your concerns immediately as follows:
>
> 1. Report the incident(s) to your immediate supervisor;
> 2. If the problem is not resolved, or the supervisor is the problem, report the incident(s) to your supervisor's supervisor or your Human Resources Manager.
> 3. If resolution is not reached, report the situation to the Vice President of Human Resources (517) 886-2344.

(*See* Policy attached hereto as Exhibit 1; emphasis added). The Policy further states that when using "Step 3" employees will be required to report the incident in writing if he has "not already done so." (*Id.*).

This Court denied MPS the affirmative defense holding that its policy did not require supervisors to report sexual harassment and did not allow for both formal and informal reporting. (DN 32 at 8-9). No magic words are required by the Sixth Circuit to have an effective policy. Consequently, the policy meets these requirements.

The first paragraph of the policy requires that employees report of harassment if they *believe that another is being treated unlawfully*. As written, any employee who is aware of harassment is *required* to make a report. This policy applies to supervisors as well as non-

6

supervisory employees, and therefore, mandates that supervisors make a report of known or suspected unlawful harassment as required by the Sixth Circuit.[2]

In addition, the policy allows for both informal and formal reporting despite not using those specific words. The policy does not dictate or limit the manner in which a report is to be communicated. It leaves open the possibility of both oral or written reports. Moreover, the policy specifically recognizes that oral reports may be given in stating that a report made pursuant to "Step 3" will require a written report if one has not already been provided. MPS provided several avenues for employees to make a report, including avenues to bypass a supervisor who is harassing, and a direct number for the Vice President of Human Resources located out-of-state. Accordingly, this policy allows for both formal and informal reporting, and is not deficient under the Sixth Circuit standard. MPS, therefore, requests that this Court reconsider its order and grant summary judgment to MPS for having established all elements of the affirmative defense.

## CONCLUSION

For the foregoing reasons, MPS respectfully requests this Court grant its Motion to Alter, Amend or Vacate its order denying summary judgment to MPS on Leenerts' sexual harassment claims.

    */s/ Cynthia L. Effinger*
    CYNTHIA L. EFFINGER
    McBRAYER PLLC
    500 W. Jefferson Street, Suite 2400
    Louisville, KY 40222
    Phone: (502) 327-5400
    Fax: (502) 327-5444
    ceffinger@mcbrayerfirm.com
    ***Counsel for Defendant, Multi Packaging Solutions of Kentucky, LLC***

---

[2] It is important to note that Leenerts took no depositions and provided no witness statements to suggest that another employee (including a supervisor) was aware of Mullins' conduct and failed to report it.

## **CERTIFICATE OF SERVICE**

       It is hereby certified that a true and correct copy of the foregoing has this 26th day of December, 2020, been served via electronic filing and/or U.S. mail upon the following:

Timothy Denison
235 S. Fifth Street, Third Floor
Louisville, KY 40202
**Counsel for Plaintiff**

                                               */s/ Cynthia L. Effinger*
                                               **Counsel for Defendant**

4847-6961-5060, v. 1

# Exhibit 1

3. The conduct or communication has the purpose or effect of unreasonably interfering with an individual's employment or creating an intimidating, hostile or offensive work environment.

Examples of prohibited harassment include, but are not limited to:

- threatening, intimidation, disparate treatment or otherwise interfering with other employees based on a protected characteristic, whether on or off duty;
- racial epithets;
- derogatory remarks relating to one of the protected characteristics;
- unwanted sexual advances, invitations, or comments, written or verbal;
- displaying derogatory or lewd posters, photographs, cartoons or drawings, or making sexual gestures;
- unwanted touching, blocking normal movement, or interfering with work because of the employee's gender or other protected characteristic;
- threats or demands to submit to sexual requests in order for you to keep your job or avoid some other adverse employment action, and offers of job benefits in return for sexual favors;
- any conduct that is so severe or pervasive that it creates a work environment abusive to employees based on a protected characteristic; and
- retaliation for having reported or threatened to report harassment.

A hostile or offensive work environment can be caused by sexually suggestive or lewd remarks, insults based on a protected characteristic, humor and jokes about sex, hugs, touches or kisses, requests for sexual favors, sexually suggestive or pornographic posters, cartoons, or drawings and obscene or sexually suggestive body gestures.

Harassment prohibited by this policy must be distinguished from conduct or communication that, even though unpleasant or disconcerting, is not inappropriate in the context of carrying out instructional, advisory, counseling or supervisory responsibilities.

### Reporting Procedure

If you believe that an employee, supervisor, manager, customer, vendor or any other individual has subjected you to harassment affecting your work environment, or if you believe anyone is being treated unlawfully, you must report your concerns immediately as follows:

1. Report the incident(s) to your immediate supervisor;
2. If the problem is not resolved, or the supervisor is the problem, report to the incident(s) to your supervisor's supervisor or your Human Resources Manager.
3. If resolution is not reached, report the situation to the Vice President of Human Resources (517) 886-2344.

8

When using Step 3 of the Reporting Procedure, you will be requested, if you have not already done so, to report the incident in writing. A written report that details the nature of the harassment, dates, times and other persons present when the harassment occurred will enable the Company to take effective, timely and constructive action.

All allegations of harassment will be promptly and thoroughly investigated as confidentially as possible, and appropriate action will be taken. The Company will not tolerate retaliation against any employee or other person who in good faith reports a violation or perceived violation of this policy, or retaliation against any employee or other person who participates in any investigation as a witness or otherwise. Retaliation is a serious violation of this policy and is subject to the investigation and corrective measures described in this policy. Any acts of retaliation must be promptly reported to your supervisor, your Human Resources Manager, or the Vice President of Human Resources.

## Employment of Relatives and Dating Relationships

In an effort to promote efficiency of operations, improve productivity and morale, avoid conflicts of interest, prevent favoritism and bias, and provide the best service to our customers, immediate family members will not directly report to a family member nor will any manager or supervisor have a "dating relationship" with an employee whom he or she supervises or whose terms or conditions of employment he or she may influence.

If employees are, or become, family members, reasonable efforts will be made to reassign one or both persons so as to achieve compliance with this policy. If accommodations of this nature are not feasible, the employees may be permitted to determine which of them will resign. Alternatively, the Company may decide, in its sole discretion, who will remain employed. For the purpose of this policy, immediate family includes: spouse, parent, child, sibling, in-law, grandparent, grandchild, stepchild, and members of household.

A similar policy will apply to "dating relationships," which, for the purpose of this policy, means any relationship involving sexual, romantic, or other intimate involvement. A manager or supervisor who wishes to engage in a dating relationship with an employee whom he or she supervises or whose terms or conditions of employment he or she may influence is required to bring this matter to the attention of the Human Resources Manager. The Company will make every effort to reassign or transfer one of the employees involved to avoid an actual conflict of interest. When no suitable accommodation can be arranged, it may be necessary for one employee to leave the company, in which case, the employees may be permitted to determine which of them will resign. Alternatively, the Company may decide, in its sole discretion, who will remain employed.

## Other Conflicts of Interest

All employees are expected to conduct business in the highest ethical manner. Employees are required to disclose to the company any conflicts of interest and/or potential conflicts of interest that they may have with MPS and/or its related entities. Violations of this policy will be considered a violation of the Company's Code of Conduct & Business Ethics and result in disciplinary action up to and including discharge.